UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

WILLIAM JOSEPH CHANDA, JR.,   )
      )
      *Plaintiff*   )
      )
*v.*      )     No. 2:15-cv-52-JHR
      )
CAROLYN W. COLVIN,   )
*Acting Commissioner of Social Security,*  )
      )
      *Defendant*   )

## MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found that, although the plaintiff was disabled, his substance use was material to his disability, disqualifying him from receiving benefits. The plaintiff seeks remand on the basis that the administrative law judge failed to comply with Social Security Ruling 13-2p ("SSR 13-2p") in making that determination. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 9) at 2-7. I find no error and, accordingly, affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 18, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 13.

administrative law judge found, in relevant part, that the plaintiff had severe impairments of borderline personality disorder and polysubstance abuse disorder, Finding 3, Record at 18; that his borderline personality disorder, in combination with his substance use disorders, met Listing 12.08, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings") and, by reference, Listing 12.09, Finding 4, *id.* at 19; that, if he stopped his substance use, he would not have any impairment or combination of impairments that met or medically equaled any of the Listings, Finding 6, *id.* at 21; that, if he stopped his substance use, he would have the residual functional capacity ("RFC") to perform a full range of work at all exertional levels and, on a sustained, competitive basis, could understand, remember, and carry out simple instructions, use judgment in making simple work-related decisions, respond appropriately to coworkers, supervisors, and usual work situations not involving the public, and adapt to changes in the ordinary work setting, Finding 7, *id.* at 22; that, if he stopped substance use, he would be able to perform some past relevant work, Finding 8, *id.* at 29; that, if he stopped substance use, considering his age (28 years old, defined as a younger individual, on his alleged disability onset date, September 14, 2012), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 9-12, *id.* at 30; that his substance use disorder was a contributing factor material to the determination of disability, because he would not have been disabled if he stopped substance use, Finding 13, *id.* at 31; and that, because his substance use disorder was material to the determination of disability, he had not been disabled within the meaning of the Social Security Act at any time from his alleged onset date, September 14, 2012, through the date of the decision, September 4, 2014, Finding 14, *id.* at 31.  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final

determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I.  Discussion

The need to determine whether substance use is material to disability stems from a provision of the Contract with America Advancement Act of 1996 ("Contract with America") that "eliminated disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability."  *Bartley v. Barnhart*, 117 Fed. Appx. 993, 994 (6th Cir. 2004) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 423(d)(2)(C).

That Contract with America directive was incorporated into the agency's regulations, which provide in relevant part:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2)  In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> (i)  If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii)  If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535(b), 416.935(b).  Effective March 22, 2013, the commissioner adopted the ruling on which the plaintiff relies, SSR 13-2p, to explain the agency's policies for how it considers whether drug addiction and alcoholism ("DAA") are material to its determination of disability. *See* SSR 13-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2015), at 479.

The plaintiff complains that, in contravention of sections 7 and 9 (the latter, mistakenly referred to as section 8) of SSR 13-2p, the administrative law judge (i) failed to establish that, during a period of sustained abstinence, long enough for the acute symptoms to abate, the plaintiff did not suffer disabling limitations and (ii) relied solely on the testimony of a medical expert at hearing, James M. Claiborn, Ph.D., to conclude that substance abuse was material.  *See* Statement of Errors at 3-6.

He also suggests that the administrative law judge erred in handling contrary evidence regarding the materiality of his DAA, namely, a U.S. Department of Veterans Affairs ("VA") decision awarding him disability benefits effective November 15, 2012, based on bipolar disorder and the opinion of Kerry Kimball, Ph.D., who performed a rating examination for the VA, that, "It appears from the information available that the Veteran['s] Substance Use Disorder, alcohol[,] is a product of and cannot be differentiated from his unstable mood (Bipolar I Disorder)."  *Id*. at 3 (quoting Record at 383); *see also id*. at 6.

### A.  Necessity of Period of Abstinence

SSR 13-2p contains separate provisions addressing analysis of periods of abstinence (section 9), whether a co-occurring physical impairment would improve in the absence of DAA

(section 6), and whether a co-occurring mental impairment would improve in the absence of DAA (section 7).  *See* SSR 13-2p at 486-88, 491-92.  The ruling uses the term "period of abstinence" to "describe a period in which a claimant who has, or had, been dependent upon or abusing drugs or alcohol . . . stopped their use."  *Id*. at 486 n.17.  It is clear, from oral argument, that the parties agree that the plaintiff had no period of abstinence, that his only co-occurring impairment is mental, and that section 7 of SSR 13-2p, pertaining to mental impairments, applies.  However, they differ sharply in their interpretation of that ruling.

The plaintiff's counsel contended that, on its face, SSR 13-2p precludes a finding that drug and alcohol abuse is material unless a claimant with co-occurring mental impairments has had a sustained period of abstinence.  Counsel for the commissioner disagreed, based not only on his reading of the ruling but also on citation, in the commissioner's brief and/or at oral argument, to several cases, including *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007), *Haning v. Calvin* [sic], Case No. 2:14-cv-573, 2015 WL 4593414 (S.D. Ohio July 30, 2015), and *Wilson v. Colvin*, No. 13-cv-2439-DDC, 2015 WL 416438 (D. Kan. Jan. 30, 2015).

For the reasons that follow, I conclude, based on the foregoing authorities and my own research, that, although SSR 13-2p *can* be read as the plaintiff's counsel suggests, the *better* reading, based not only on its plain language but also Congress's intent in enacting the Contract with America, is that of the commissioner.

Section 9 of SSR 13-2p, which answers the question, "How do we consider periods of abstinence?[,]" provides, in relevant part:

> a.    Each substance of abuse, including alcohol, has different intoxication and long-term physiologic effects.  In addition, there is a wide variation in the duration and intensity of substance use among claimants with DAA, and there are wide variations in the interactions of DAA with different types of physical and mental disorders.  For these reasons, we are unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is

material in every case.  In some cases, the acute and toxic effects of substance use or abuse may subside in a matter of weeks, while in others it may take months or even longer to subside.  For some claimants, we will be able to make a judgment about materiality based on evidence from a single, continuous period of abstinence, while in others we may need to consider more than one period.

      b.      In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate.  Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.  Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended.  To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

SSR 13-2p at 491 (footnotes omitted).

      Section 6, which answers the question, "What do we do if the claimant's other physical impairment(s) improve in the absence of DAA?[,]" provides, in relevant part:

      a.      DAA can cause or exacerbate the effects of physical impairments.  In some cases, the impairments and their effects may resolve or improve in the absence of DAA.

      b.      Usually, evidence from a period of abstinence is the best evidence for determining whether a physical impairment(s) would improve to the point of nondisability.  The period of abstinence should be relevant to the period we are considering in connection with the disability claim.  This evidence need not always come from an acceptable medical source.  If we are evaluating whether a claimant's work-related functioning would improve, we may rely on evidence from "other" medical sources, such as nurse practitioners, and other sources, such as family members, who are familiar with how the claimant has functioned during a period of abstinence.

      c.      We expect some physical impairments to improve with abstinence from drugs or alcohol.

          ***

      iv.      Some claimants who have been diagnosed with a Substance Use Disorder do not have a period of abstinence.  If a claimant does not have a period of abstinence, an acceptable medical source can provide a medical opinion

regarding whether the claimant's impairments would be severely limiting even if the claimant stopped abusing drugs or alcohol.  We consider the opinion of an acceptable medical source sufficient evidence regarding materiality as long as the acceptable medical source provides support for their opinion.  The determination or decision must include information supporting the finding.

\*\*\*

> d.    We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence (including medical opinion evidence) does not establish that the claimant's physical impairment(s) would improve to the point of nondisability in the absence of DAA.

*Id*. at 487-88 (citations and footnotes omitted).

Finally, section 7, which answers the question, "What do we do if the claimant's co-occurring mental disorder(s) improve in the absence of DAA?[,]" provides, in relevant part:

> a.    Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA.  We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.

> b.    To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA.  Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.

\*\*\*

> d.    We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.

*Id*. at 488.

At oral argument, the plaintiff's counsel noted and/or argued that:

1.      Although section 6 expressly contemplates the analysis of improvement in co-occurring physical impairments without the benefit of a period of abstinence, section 7 contains no such provision with respect to co-occurring mental impairments.

2.      While section 6 permits sole reliance on the opinion of a medical source to establish materiality in cases in which there is no period of abstinence, section 7 expressly bars sole reliance on medical expertise and the nature of a claimant's mental disorder.

3.      In section 7(a), the commissioner admits that she knows of no research data that can be used to predict reliably that a given claimant's co-occurring mental disorders would improve upon the cessation of drug or alcohol use, lending support to the notion that, as to these disorders, no evidence but that gleaned from a period of sustained abstinence can demonstrate the materiality of DAA.

4.      Section 9(b) reinforces that what is required to demonstrate materiality in the case of co-occurring mental impairments is a period of abstinence long enough to allow the acute effects of DAA to abate.

5.      Section 7 directs adjudicators to find DAA non-material if the evidence "does not establish that the claimant's co-occurring mental disorder(s) would improve *to the point of nondisability* in the absence of DAA." *Id*. (emphasis added).[2]

Counsel for the commissioner rejoined that SSR 13-2p does not expressly dictate that there must be a period of abstinence in cases of co-occurring mental impairments before an adjudicator can find DAA material.  He argued that section 9, on its face, contemplates that an adjudicator will not always have the benefit of consideration of a period of abstinence, stating, for example, "In all cases in which we *must* consider periods of abstinence . . . ." *Id*. at 491 (emphasis added).  He

---

[2] Section 6 contains nearly identical language.  *See* SSR 13-2p at 488.

observed that, notwithstanding the language in section 7(d) to which the plaintiff's counsel pointed, section 5(a) of the ruling makes clear that the claimant, not the commissioner, bears "the burden of proving disability throughout the DAA materiality analysis." *Id.* at 483.  Finally, he argued that construing the ruling as the plaintiff does would turn the Contract with America on its head, permitting claimants with co-occurring mental impairments to obtain benefits *because* they are continuing to abuse drugs and/or alcohol.

The commissioner's argument is persuasive.  SSR 13-2p does not expressly state that, in cases of co-occurring mental impairments, DAA cannot be found material unless there is a sustained period of abstinence.  While section 7(b) makes clear that, unlike in the case of co-occurring physical impairments, an adjudicator cannot rely exclusively on a medical opinion and the nature of a claimant's mental disorder(s) to find DAA material, it does not require that evidence be obtained through a period of abstinence.  Rather, it states that, to find DAA material, an adjudicator "must have evidence in the case record" that establishes the materiality of DAA.  *Id.* at 488.

Further, although not mentioned by counsel for the commissioner, two other provisions in section 5 of the ruling cast doubt on the proposition that a materiality determination hinges on the existence of a period of abstinence in cases involving co-occurring mental impairments.  Section 5(a), discussing the burden of proof, goes on to state, "There does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."  *Id.* at 483. Presumably, there likewise would not need to be such evidence for an adjudicator to find that a claimant had *not* met his or her burden of proving disability.  And section 5(f)(ii) of the ruling contemplates that, when an adjudicator reaches the question of materiality, he or she "must *project*

the severity of the claimant's other impairment(s) in the absence of DAA." *Id*. at 486 (emphasis added).

Beyond this, as counsel for the commissioner noted at oral argument, the purpose of the Contract with America provision at issue "was to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Parra*, 481 F.3d at 747 (citation and internal quotation marks omitted).

On one or more of these bases, courts have rebuffed arguments that either SSR 13-2p or EM-96200, an August 30, 1996, emergency message issued by the commissioner to adjudicators to provide guidance on DAA issues that was superseded by SSR 13-2p, requires that there be a period of abstinence to find DAA material in cases with co-occurring mental impairments.[3]  *See, e.g.*, *Haning*, 2015 WL 4593414, at *2-*3 ("[T]here is no language in [SSR] 13-2P which suggests that evidence of a period of abstinence is a mandatory prerequisite to a finding of materiality in a case involving mental impairments. . . .  When the claimant never achieves sobriety, the materiality determination will necessarily be hypothetical and therefore more difficult, but the claimant cannot avoid a finding of no disability simply by continuing substance abuse.") (citation and internal quotation marks omitted); *Wilson*, 2015 WL 416438, at *5 n.2 & *6 (in circumstances involving co-occurring mental impairments in which an administrative law judge "was unable to examine the most useful evidence of DAA materiality – the effects of periods of abstinence on [the claimant's] impairments – because the record presented no periods of abstinence[,]" she

---

[3] Like SSR 13-2p, EM-96200 consisted of a series of questions and answers.  *See Ambrose v. Astrue*, No. 07-84-B-W, 2008 WL 648957, at *3 (D. Me. Mar. 5, 2008) (rec. dec., *aff'd* Mar. 26, 2008).  EM-96200 stated, as does SSR 13-2p, that the commissioner knew of no research data to reliably predict the expected improvement in a coexisting mental impairment if drug/alcohol use stopped.  *See id*. at *4.  It observed: "The most useful evidence that might be obtained in such cases is that relating to a period when the individual was not using drugs/alcohol."  *Id*. (quoting EM-96200).  It noted, "When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate."  *Id*. (quoting EM-96200).

nonetheless properly determined based on treatment notes and consultative opinions that the claimant's DAA was material to his disability; while court did not apply SSR 13-2p, which had not taken effect at the time of the decision under review, it described the ruling as generally consistent with the emergency message regarding DAA cases, which it did apply) (citation and internal quotation marks omitted); *Evans v. Astrue*, No. CA 11-146 S., 2012 WL 4482366, at *7-*8 (D.R.I. Aug. 23, 2012) (rejecting claimant's argument that, pursuant to EM-96200, he should have been found disabled if his continuous substance abuse made it impossible to determine whether he would still be impaired if he stopped the abuse; noting that, while EM-96200 described evidence of a claimant's condition during a period of abstinence as the most useful evidence, it did not prevent adjudicators from turning to the available evidence to determine materiality, and acceptance of the claimant's argument "would lead to an absurd result").

For all of these reasons, the plaintiff falls short of demonstrating entitlement to remand on this basis.

### B.  Quality of Evidence in Support of Finding of Materiality of DAA

The plaintiff argues, in the alternative, that even if SSR 13-2p does not require the existence of a period of abstinence as a condition precedent to finding DAA material in cases involving co-occurring mental impairments, the administrative law judge's determination transgressed the ruling in that he effectively relied solely on the opinion of a medical expert, Dr. Claiborn, *see* Statement of Errors at 3, 6, and both the administrative law judge and Dr. Claiborn relied on "only the vaguest references to support their conclusion that [the plaintiff's] condition improved during periods where his drinking had abated[,]" *id.* at 4.

The administrative law judge did not rely solely on a medical opinion.  He discussed the entire longitudinal record in detail, *see* Record at 23-28, in support of his overarching conclusion that:

> Treatment records reveal that, although [the plaintiff] did not stop drinking altogether after his November 2013 inpatient admission, the [plaintiff] "cut down" significantly in the amount and the frequency of his drinking.  During this period, he reported to his various providers that his mood is more stable, his outlook is more positive, and his activity level is increasing.  During this same period, his various providers noted that he presented as significantly less depressed and demonstrated increased motivation in his course of treatment.  As noted above, the [plaintiff] testified that he has been compliant with his medication for at least the past three months.  He further testified that he stopped using alcohol altogether at some point in June 2014.

*Id*. at 27.   For example, he pointed to:

      1.     Dr. Claiborn's testimony that the plaintiff experienced "rapid improvement" in his acute mental symptoms after being "sober just a little while[,]" *id*. at 58;

      2.     The report of both the plaintiff and his wife, during the plaintiff's inpatient hospitalization from November 10-13, 2013, for treatment of suicidal ideation and detoxification from alcohol, that "his suicidality is only associated with intoxication from alcohol[,]" *id*. at 378;

      3.     The plaintiff's report to treating psychologist David A. Faigin, Ph.D., on November 20, 2013, that he was "sober from alcohol since his hospitalization and is feeling 'clear headed and like myself again'" and was "more self aware now in regards to the severe negative impacts his alcohol abuse has had on his mood and behaviors in recent months," as well as Dr. Faigin's findings on mental status examination that the plaintiff was "alert, cooperative, oriented x3, well dressed and groomed[,]" and, although his mood was "mildly d[y]sphoric[,]" he was "[s]ignificantly less depressed and fatigued on presentation compared to last session" and his "thought process seemed well ordered and coherent, and insightful, and he was open and expressive[,]" *id*. at 319-20;

4.      Dr. Faigin's notation on December 6, 2013, of significant improvement in the plaintiff's mood and outlook during a period of "very limited" alcohol use, with essentially normal findings on mental status examination, *see id*. at 439; and

5.      Dr. Faigin's notation on June 17, 2014, that, while the plaintiff reported that he had increased his drinking and felt irritable and more easily angered when he did not drink, he discussed "negative impacts of his drinking behavior" and "reflect[ed] on his past success in periods of sobriety and active recovery[,]" *id*. at 1072.

At oral argument, the plaintiff's counsel underscored that section 7(d) of SSR 13-2p pledges, "We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would *improve to the point of nondisability in the absence of DAA*." SSR 13-2p at 488 (emphasis added).

He asserted that, even assuming that some of the evidence on which either the administrative law judge or Dr. Claiborn relied established that his client's condition improved absent DAA, none of it demonstrated improvement to the point that his client could sustain full-time work.  Thus, he reasoned, the Claiborn opinion was the sole evidence of record supporting the proposition that his DAA was material, and SSR 13-2p forbids sole reliance on a medical opinion in cases such as this.  For several reasons, I am unpersuaded.

First, the plaintiff focuses on Dr. Claiborn's and/or the administrative law judge's asserted misplaced reliance on four treatment notes.  *See* Statement of Errors at 5.  Yet, neither relied exclusively on those notes.  *See* Record at 23-28, 54-55, 57-58.  The plaintiff does not explain how the administrative law judge's or Dr. Claiborn's analysis, *in toto*, failed to yield substantial evidence in support of the finding that DAA was material.

<u>Second</u>, the plaintiff's criticisms regarding those four notes are not well taken.

The plaintiff first asserts that both Dr. Claiborn and the administrative law judge erred in relying on the June 17, 2014, note of Dr. Faigin (mentioned above) in view of the fact that Dr. Faigin indicated that the plaintiff's drinking remained a significant problem and that he had experienced increased psychomotor agitation.  *See* Statement of Errors at 5.

Dr. Claiborn cited the June 17, 2014, note for the proposition that, although Dr. Faigin raised some concern about the plaintiff's alcohol consumption, he deemed him generally emotionally stable.  *See* Record at 55.  The administrative law judge cited it for the proposition that, "as recently as June 17, 2014, during the period in which the [plaintiff] reported initially abstaining from alcohol, his mental stability and forward focus is noted to be stable[,]" and, in fact, "during this examination, he was able to recognize and acknowledged the negative impact that alcohol has on his mental functioning."  *Id*. at 22 (citations omitted).

While the note does indicate that the plaintiff reported that he had been drinking more as of that date, with increased psychomotor agitation that might be caused by the effects of mixing alcohol and psychiatric medications, the plaintiff also stated that he was not drinking enough to become drunk, "just a little buzzed."  *Id*. at 1072.  In addition, Dr. Faigin "[e]xplored [with the plaintiff] negative impacts of his drinking behavior and helped him reflect on his past success in periods of sobriety and active recovery."  *Id*.

The administrative law judge and Dr. Claiborn reasonably deemed the note consistent with the longitudinal evidence indicating functional improvement when the plaintiff cut back on alcohol consumption.

The plaintiff next faults Dr. Claiborn's reliance on a June 24, 2014, statement to Michael Eng, who recertified him for the use of medical marijuana for knee pain, that he had had "excellent

mood stabilization" on the medication regimen prescribed by treating mental health physician's assistant David Saphier, PA-C. Statement of Errors at 5; Record at 54-55, 1063. He argues that this had "no probative value in terms of a sustained period of abstinence." Statement of Errors at 5. This criticism is predicated on a mistaken interpretation of SSR 13-2p. As discussed above, that regulation does not require, in support of a finding of the materiality of DAA, that a claimant with co-occurring mental impairments have a sustained period of abstinence. The Eng note indicates that, during a period of time when the plaintiff had decreased his alcohol use and was compliant with prescribed psychiatric medications, his mood was stable. That, in turn, supports the materiality determination.

The plaintiff next assails Dr. Claiborn's reliance on December 6 and 17, 2013, notes of Dr. Faigin for the proposition that, during a time when his drinking was still an issue but "much reduced from previous patterns[,]" he had passed some college entrance exams and the severity of his symptoms had decreased. Statement of Errors at 5; Record at 58, 437-39. The plaintiff cites to page 388 of the Record for the proposition that these seeming improvements occurred shortly before a psychiatric hospitalization. *See* Statement of Errors at 5. However, page 388 does not reflect such a hospitalization. *See* Record at 388. Nor does the record generally. As the administrative law judge found, there is no evidence of any such hospitalization after the plaintiff's November 2013 inpatient admission, at which point he cut down significantly on his drinking. *See id.* at 27.

Finally, the plaintiff faults the reliance of both Dr. Claiborn and the administrative law judge on the fact that he passed an examination for an auto mechanic course shortly after his hospitalization. *See* Statement of Errors at 5; Record at 22, 58, 437. He notes that he testified that he had to abandon the classes because of anxiety. *See* Statement of Errors at 5; Record at 50-51.

The administrative law judge deemed the plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms in the absence of substance use not credible. *See* Record at 23. However, even crediting the plaintiff's testimony that his anxiety prevented his successful completion of the course, the administrative law judge and Dr. Claiborn supportably deemed it significant that, during a time when the plaintiff was drinking less, he was able to pass entrance examinations for the course.

Third, while section 7(d) *can* be read to impose a heightened burden on the commissioner to prove DAA material, the better reading, taking into consideration that section 5(a) clarifies that the claimant bears the burden of proving disability throughout the DAA materiality analysis, is that it does not.

With the proviso that, in cases involving co-occurring mental impairments, an administrative law judge may not rely solely on a medical opinion to support a finding of materiality, the test is simply whether substantial evidence supports the finding. *See, e.g., Haning*, 2015 WL 4593414, at *3 ("The court agrees with the conclusion of the magistrate judge that there is substantial evidence supporting the ALJ's [administrative law judge's] finding that plaintiff failed to satisfy her burden of showing that she would suffer from disabling mental impairments in the absence of her alcoholism."); *Benelli v. Commissioner of Soc. Sec*., Civil Action No. 14-10785-MBB, 2015 WL 3441992, at *24 (D. Mass. May 28, 2015) (pursuant to SSR 13-2p, "[t]he dispositive inquiry is whether substantial evidence supports the materiality finding and, in particular, the ALJ's critical findings changing from marked to mild the social functioning and the concentration, persistence or pace function when plaintiff no longer abused alcohol").

While, in this case, each treatment note on which the administrative law judge relied did not necessarily indicate that, in the absence of DAA, the plaintiff's functioning would improve to

16

the point that he could work full-time, the combination of the longitudinal record and Dr. Claiborn's expert opinion comprises substantial evidence in support of that finding.

Evidence such as that on which the administrative law judge relied in this case – that the plaintiff's functioning demonstrably improved during even brief abstinences from alcohol or limitation on its use, that both he and his wife acknowledged that he was suicidal only when intoxicated, and that he acknowledged the ill effects of his substance use – has been held sufficient to constitute substantial evidence of the materiality of DAA. *See, e.g., Benelli*, 2015 WL 3441992, at *21, *24-*25 (no violation of section 7(d) of SSR 13-2p in determination that DAA was material in case of claimant with co-occurring mental impairments when record evidence disclosed improvements during brief periods of abstinence; for example, claimant scored a 30 out of 30 on a mental status exam, made good eye contact, and had appropriate mood and affect, and administrative law judge also relied on expert opinion that functional limitations were mild even taking into account the effects of DAA); *Cage v. Commissioner of Soc. Sec.*, 692 F.3d 118, 126-27 (2d Cir. 2012) (determination that DAA was material in case of claimant with co-occurring mental impairments was supported by substantial evidence when, *inter alia*, claimant's mental status examinations improved during brief periods of abstinence, an addiction therapist stated that DAA worsened the claimant's medical and emotional issues, and the claimant admitted that she had attempted suicide only while under the influence and that DAA was not helpful to her mental health).

In this case, substantial evidence supports the administrative law judge's materiality finding, which was not predicated solely on a medical opinion.  Remand, accordingly, is unwarranted on the basis of this point of error.

### C.  Handling of VA Disability Rating Decision, Kimball Opinion

The plaintiff finally challenges the administrative law judge's handling of the VA decision and the Kimball opinion, arguing:

> Because of the errors in evaluating Plaintiff's disorders, the Decision also errs in failing to accurately evaluate Dr. Kimball's opinion and the VA finding of Disability.  The record, and Social Security policy, in fact support Dr. Kimball's opinion.

Statement of Errors at 6.

At oral argument, the plaintiff's counsel clarified that this point hinged on the success of the plaintiff's prior points.  Given that I have found those points unsuccessful, remand is unwarranted on this basis, as well.

## II.  Conclusion

For the foregoing reasons, I **AFFIRM** the commissioner's decision.

Dated this 15th day of October, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge